# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| BIANCA JASMINE THORINGTON, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )        Civil Action No. 1:16-cv-626 |
| | ) |
| SALLY BEAUTY SUPPLY LLC, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. No. 32. Plaintiff's complaint alleges sex discrimination, harassment, hostile work environment, retaliation, and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

### I. Background

### A. Factual History

Defendant, Sally Beauty, LLC, is a wholesale and retail distributor of professional beauty products. SOF ¶ 1. The company is based in Texas but operates internationally, including 77 stores in the Commonwealth of Virginia. SOF ¶ 1. Defendant has an equal opportunity employee policy set forth in the employee handbook. SOF ¶ 2. Defendant also maintains a "Discrimination/Harassment Complaint Procedure" under which employees are obligated to report incidents of discrimination or harassment to the human resource manager, vice president of human resources, or the company president. SOF ¶ 3. The policy protects whistleblowing

employees and those who cooperate in an investigation from retaliation. SOF ¶ 4. Defendant also maintains a complaint resolution program which empowers employees to publicly or anonymously express concerns about company practices. SOF ¶ 5.

Defendant requires its hourly employees to clock in and out every time they arrive or leave the store. SOF ¶ 6. While Defendant's employees serve at-will, the company handbook identifies infractions warranting "immediate termination" including "[f]alsification of Company records" such "time sheets/Time Clock records." SOF ¶ 7.

Plaintiff, Bianca Thorington, was hired on or about November 1, 2012 as an assistant store manager with the Defendant at its Woodbridge, Virginia store. SOF ¶ 10. On December 12, 2012, she was transferred to the Fredericksburg, Virginia store as an assistant manager. SOF ¶ 11. Plaintiff's direct supervisor in Fredericksburg was Store Manager, Julie Cochran (now Julie Carey, hereafter "Carey"). SOF ¶ 12. Plaintiff's supervisor was District Manager Barbara Lawter. SOF ¶ 12. Plaintiff received a performance appraisal on March 18, 2013 and was given a perfect score by Lawter and Carey. Dkt. No. 49, at 16, ¶ 14. She was classified by Defendant as "distinguished." *Id.*

On May 30, 2013, suspecting that she may be pregnant, Plaintiff contends that Carey sent her to a nearby store to purchase a pregnancy test kit. Dkt. No. 49, at 7. Plaintiff took the test in the employee bathroom while Carey waited outside the door. *Id.* The test was positive, confirming Plaintiff's suspicion that she was pregnant. SOF ¶ 13. Carey found out about the pregnancy at the same time. SOF ¶ 13. Plaintiff avers that Carey called Lawter on June 4, 2013, in Plaintiff's presence, to inform Lawter of the pregnancy. Dkt. No. 49, at 8.

Two weeks later, Plaintiff received a $0.75 per hour raise, effective June 9, 2013. SOF ¶ 14. On August 10, 2013, Plaintiff and Lawter met to discuss Plaintiff's role with Defendant.

Plaintiff avers that Lawter offered her an ultimatum: step down as assistant manager and take part-time status or transfer to another store 75 miles away. Dkt. No. 49, at 8. Plaintiff further avers that Lawter told her that because the store was not making enough money it could no longer afford a full-time assistant manager. Following the meeting with Lawter, Plaintiff's role was changed from full-time Assistant Store Manager to part-time Sales Associate (20 hours a week), effective September 1, 2013. SOF ¶ 15. Her hourly rate remained unchanged. SOF ¶ 15. On September 8, 2013, Defendant hired Teresa Shipman as the new Assistant Store Manager in the Fredericksburg store at an hourly rate of $10.00 per hour. Dkt. No. 33, Exh. 13.

On August 30, 2013, Plaintiff was scheduled to work from noon to 8:30 p.m. SOF ¶ 16. The only other employee present during her shift was a recent hire. SOF ¶ 16. During her shift, Plaintiff left the store three times without clocking out for a total of approximately two hours. SOF ¶ 16-18. The departures were captured on security camera footage at the store. SOF ¶ 17. Plaintiff also clocked out for one break from 6:00 p.m. to 6:16 p.m. SOF ¶ 18. Plaintiff testified during discovery that she did not recall the reasons for any of her departures from the store that day but that she only would have left without clocking out if she was out on store business. SOF ¶ 29, Dkt. No. 49, ¶ 16. She testified that she occasionally left the store for legitimate business purposes including making change at a nearby bank or purchasing supplies at nearby stores. SOF ¶ 29. Upon belief that Plaintiff had left the new employee alone during the August 30, 2013 shift, Lawter and Carey reviewed the security camera footage on September 23, 2013. SOF ¶ 17. On September 24, 2013, when Plaintiff arrived for her shift, Carey and Shipman confronted her about the video surveillance. SOF ¶ 19. Plaintiff was offered an opportunity to write a statement explaining the reason for her absence but she declined. SOF ¶ 20. The same day Carey suspended the Plaintiff. SOF ¶ 20.

Later in the same day after the suspension, Plaintiff phoned Carey and recorded the conversation. SOF ¶ 21. In the call, Plaintiff questioned why she was not permitted to see the video surveillance. Carey insisted that she could not share the video because it was controlled by Defendant's corporate office. *Id.* Sometime after the August 30 incident, Lawter met with Human Resources Business Partner Tracy Advellas and they agreed to terminate Plaintiff's employment. SOF ¶ 25. Defendant cited Plaintiff's unwillingness to sign the statement on September 24 as a contributing factor in terminating Plaintiff's employment. *Id.*

Plaintiff first learned about her firing on September 26, 2013, when she called the Fredericksburg store and spoke with Carey. SOF ¶ 26. Carey advised Plaintiff that she had been terminated because of the video. Defendant contends that Plaintiff did not contact Defendant's HR department or Lawyer to discuss the termination. SOF ¶ 28. Plaintiff avers that she attempted to report the incident to the Human Resources Manager using the toll-free phone number. Dkt. No. 49, at 13. However, she never directly reached anyone on the line despite leaving messages with the Manager and receiving voicemails in response from the Human Resources department. *Id.*

### B. Procedural History

Plaintiff filed an intake questionnaire with the EEOC on July 9, 2014. Dkt. No. 49, Exh. F. Plaintiff marked "Pregnancy" as the reason for the claim of employment discrimination. *Id.* at 2. The questionnaire protested Plaintiff's termination and her being forced to work part time. *Id.* at 2. On the last page of the questionnaire, Plaintiff checked a box to affirm "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name." *Id.* at 4. Plaintiff appended an affidavit to

the intake questionnaire which set forth her reasons to believe she had been discriminated against. *Id.* at 5-7.

Plaintiff subsequently filed a formal charge of discrimination on September 12, 2014, 346 days after she was terminated by Defendant. SOF ¶ 32. The EEOC issued Plaintiff a right to sue letter on March 3, 2016. Dkt. No. 1, ¶ 6.

Plaintiff filed a complaint in this matter against Sally Beauty Holding, Inc. on June 6, 2016, alleging sex discrimination, harassment, hostile work environment, retaliation, and pregnancy discrimination. Dkt. No. 1. Sally Beauty Holding, Inc. answered the Complaint. Dkt. No. 4. Plaintiff filed an Amended Complaint on October 13, 2016, to amend the caption to correctly identify the Defendant. Dkt. No. 13. The Amended Complaint alleges: sex discrimination (Count I); pregnancy discrimination – unlawful discharge during pregnancy (Count II); harassment (Count III); hostile work environment (Count IV); and retaliation (Count V). Defendant filed an Answer to the Amended Complaint on October 27, 2016. Dkt. No. 14.

During discovery, Plaintiff requested that the Defendant turn over the video or any related works which would show Plaintiff exiting and entering the store. In a hearing before Magistrate Judge Buchanan on April 5, 2017, Defendant averred that the tape had been deleted and that no records existed which could be turned over in discovery. Dkt. No. 53.

On March 21, 2017, Defendant moved for summary judgment. Dkt. No. 32. The Court conducted a hearing in this matter on April 14, 2017. Dkt. No. 54.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In making a summary judgment determination, the Court must bear in mind that "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. Discussion

Defendant advances a number of arguments supporting the Motion for Summary Judgment in whole or in part. Defendant contends that summary judgment should be granted with respect to: (1) all of Plaintiff's claims because Plaintiff failed to timely file a charge of discrimination with the EEOC; (2) Plaintiff's claims of harassment, hostile work environment, and retaliation for failure to exhaust administrative remedies; (3) Plaintiff's claims of harassment and hostile work environment for failure to follow Defendant's established procedures for reporting such conduct; (4) Plaintiff's claim for gender or pregnancy discrimination for failure to state a prima facie case; (5) Plaintiff's claim for retaliation for failure to state a prima facie case; Plaintiff's claim for discrimination and retaliation for failure to show pretext of Defendant's legitimate reasons for its actions; (6) Plaintiff's claim for hostile work environment for failure to present a factual question of a hostile work environment; (7) and Plaintiff's pregnancy harassment claim because it is subsumed by her hostile work environment claim. This memorandum addresses these arguments in turn.

## A. Timely Filing

Defendant contends that Plaintiff failed to file a charge within the 300 day requirement thereby depriving the Court of jurisdiction over the suit. Plaintiff counters that she filed an intake questionnaire within the 300 day deadline and that the intake questionnaire was sufficient to vest the Court with jurisdiction. Defendant rejoins that the intake questionnaire in this case did not expressly request relief from the EEOC and did not put Defendant on notice of the allegations in part because it was not served on the Defendant.

"Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "This requirement exists to minimize judicial interference with the operation of the federal government. It also affords an agency the opportunity to right any wrong it may have committed." *Austin v. Winter*, 286 Fed.Appx. 31, 35 (4th Cir. 2008). Lack of exhaustion deprives the district court of subject matter jurisdiction over a civil action and necessitates dismissal. *See Jones*, 551 F.3d at 300-301.

An intake questionnaire may constitute a charge if it specifically requests the EEOC to take action and releases the identity of the accuser to the employer. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 404 (2008) ("[F]iling is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf."). In *Holowecki*, the Supreme Court found that an intake questionnaire did qualify as an EEOC charging document. *Id.* at 405. The Court focused on two pieces of evidence in the questionnaire and supplemental materials which supported this determination. First, the employee "gave consent for the agency to disclose her identity to the employer" on the intake questionnaire. *Id.* at 406. Second, the employee submitted an affidavit which detailed the

7

allegations against the employer and culminated in a request for the agency "to please force

Federal Express to end their age discrimination." *Id.* (quotations omitted). The Court found that

"the combination of the waiver and respondent's request in the affidavit that the agency 'force'

the employer to stop discriminating against her were enough to bring the entire filing within the

definition of charge." *Id.* Therefore, the Court adopted the intake questionnaire in the case as a

"charge" and recommended that "[t]o reduce the risk of further misunderstandings by those who

seek its assistance, the agency should determine, in the first instance, what additional revisions in

its forms and processes are necessary or appropriate." *Id.* at 407.

In *Bland v. Fairfax County, Va.*, a court in this district, applying *Holowecki*, found that an

EEOC intake questionnaire satisfied the charge requirement. 799 F. Supp. 2d 609, 614 (E.D. Va.

2011). In *Bland* the "intake questionnaire form [] states that its purpose 'is to solicit information

in an acceptable form consistent with statutory requirements to enable the Commission to act on

matters within its jurisdiction.'" *Id.* at 617. The court found that this language in the

questionnaire was reasonably construed as a request for the agency to take remedial action. *Id.*

The intake questionnaire in *Bland* was not accompanied by a sworn affidavit but the court

determined "that an attached affidavit is not a necessary prerequisite to an intake questionnaire

constituting a charge." *Id.* at 616. The court found that another recent decision in this district,

*Graves v. Industrial Power Generating Corp.*, 2011 WL 63696 (E.D.Va. Jan. 5, 2011), *aff'd*, 438

F. App'x 174 (4th Cir. 2011), misinterpreted *Holowecki* and placed undue emphasis on the need

for an affidavit. *Id.* at 616. The court in *Bland* found that a sworn affidavit was only necessary

in *Holowecki* because "[t]he design of the [intake] form in use in 2001 [when respondent filed

the intake form] . . . does not give rise to the inference that the employee requests action against

the employer." *Id.* at 614 (quoting *Holowecki*, 552 U.S. at 405).

The intake questionnaire which Plaintiff submitted satisfies the requirements set forth in *Holowecki* and is consistent with the *Bland* decision. Plaintiff's intake questionnaire expressly requested that the EEOC take action. The final page of the intake questionnaire offered Plaintiff two options for proceeding. Checking "Box 1" meant you "want[ed] to talk to an EEOC employee before deciding whether to file a charge." Dkt. No. 49, Exh. F, at 4. The box further indicated that "I understand that by checking this box I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." *Id.* Thus "Box 1" tracks the design of the intake form in 2001 when *Holowecki* was decided. *See Holowecki*, 552 U.S. at 405 ("[t]he design of the form in use in 2001 . . . does not give rise to the inference that the employee requests action against the employer."). "Box 2", which Plaintiff selected, is markedly different. It expressly indicates that "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." Dkt. No. 49, Exh. F, at 4. In addition, "Box 2" expressly authorized the EEOC to give the employee's information to the employer. Dkt. No. 49, Exh. F, at 4. The express authorization to share information with the employer on the intake questionnaire in this case is even stronger support that the questionnaire can function as a charge than the "consent for the agency to disclose [] identity to the employer" on the questionnaire in *Holowecki*. *Holowecki*, 552 U.S. at 405.

Plaintiff not only submitted the intake questionnaire but also an accompanying, sworn affidavit. The existence of the sworn affidavit renders the Defendant's reliance on *Graves v. Industrial Power Generating Corp.* unavailing. 2011 WL 63696. In *Graves*, the plaintiff submitted an unsworn affidavit in conjunction with the EEOC intake questionnaire. *Id.* at *8. The court found that the absence of a sworn intake questionnaire or affidavit rendered the *Holowecki* standard inapplicable. *Id.* at *8, n.19. But in this case Plaintiff did provide a sworn

affidavit with the questionnaire. For this reason, the case at bar is not analogous to *Graves* and the *Holowecki* standard applies. Additionally, the Court agrees with the reasoning in *Bland*, that the sworn affidavit is not a necessary condition to interpreting an intake questionnaire as a charge. *See Bland*, 799 F. Supp. 2d at 616 ("[T]he holding in *Holowecki* is clear and does not, by its terms, require an accompanying affidavit or that the intake questionnaire be sworn"). The affidavit is only one piece of evidence, along with the language of the intake questionnaire and Plaintiff's statements on that document, which contributes to the Court's analysis.

Defendant also analogizes this case to *Balas v. Huntington Ingalls Indus., Inc.*, but that case does not compel a different result here. 711 F.3d 401 (4th Cir. 2013). In *Balas*, the court found that an intake questionnaire and letters sent to the EEOC which were not shared with the employer could not form part of the formal charge. *Id.* at 408. Similarly, Defendant asserts that Plaintiff's intake questionnaire should not constitute a charge because Defendant never received the document. But neither the *Balas* court nor the court from which appeal was taken considered *Holowecki* or the specific language in that plaintiff's EEOC questionnaire. *See generally id.*; *Balas v. Huntington Ingalls Indus., Inc.*, 2011 WL 4478864 (E.D. Va. Sept. 26, 2011). Thus, while the *Balas* court declined to adopt the appellant's argument "that she should not be penalized for the EEOC's 'negligence' in failing to send a copy of her intake questionnaire and letters to the EEOC to her employer"; the Supreme Court found in *Holowecki* that "[i]t would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control." *Balas*, 711 F.3d at 408; *Holowecki*, 552 U.S. at 404. The Court agrees that it would be unfair to exclude the intake questionnaire under similar conditions. For this reason, the fact that Defendant did not receive the intake questionnaire is not dispositive of whether the form constitutes a charge.

The Supreme Court unequivocally held in *Holowecki* that "a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf." *Id.* Accordingly, any analysis of whether an intake questionnaire constitutes a charge is fact-specific and based on the form and substance of the filing. For the reasons discussed above, the Court finds that the intake questionnaire in this case satisfies the *Holowecki* standard and the Court has jurisdiction to entertain claims arising out of the questionnaire.

## B. Exhaustion

Defendant contends that even if the Court treats the intake questionnaire as a charge of discrimination, Plaintiff has nevertheless failed to exhaust counts III (harassment), IV (hostile work environment), and V (retaliation) in the Amended Complaint. Defendant contends that Plaintiff failed to raise these forms of discrimination in the EEOC charge. Furthermore, the allegations in Plaintiff's Amended Complaint that purport to buttress these claims are not reasonably related to any factual allegations in the charge. Thus, neither the EEOC nor Defendant was put on notice of the claims. Plaintiff argues that the charge raised legitimate harassment and hostile work environment issues. Specifically, the "demotion, reduction in hours, and false allegations of 'time fraud' and the way [Carey] intruded, meddled in her private her using her power as her boss, and the way [Lauter] intimidated and coerces her into writing a statement without her own volition" are part of those claims. Dkt. No. 49, at 21 (errors in original). Plaintiff adds that she "has also exhausted her administrative remedies with respect to sex discrimination, hostile work environment, harassment, and retaliation, based on the same facts as pregnancy discrimination." *Id.* at 24.

11

The contents of the EEO charge guide the permissible scope of the employee's

subsequent legal claims. *Jones*, 551 F.3d at 300. "[A] failure by the plaintiff to exhaust

administrative remedies concerning a Title VII claim deprives the federal courts of subject

matter jurisdiction over the claim." *Id.* As such, "[o]nly those discrimination claims stated in

the initial charge, those reasonably related to the original complaint, and those developed by

reasonable investigation of the original complaint may be maintained in a subsequent Title VII

lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Plaintiff

bears the burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n*

*v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir.2008).

For the reasons discussed *supra* III.A., the Court looks to both the intake questionnaire

and the formal charge to determine the permissible scope of Plaintiff's legal claims. These

documents do not support the hostile work environment or sexual harassment claims. To

identify a hostile work environment claim or a sexual harassment claim caused by a hostile work

environment,[1] the Court looks to evidence of an ongoing pattern of discrimination or abuse

because allegations of specific episodes of harassment may be insufficient. *See Chacko v.*

*Patuxent Inst.*, 429 F.3d 505, 511 (4th Cir. 2005) (finding no exhaustion of hostile work

environment claim where "[t]he administrative charges at bottom alleged specific episodes of

harassment."). Plaintiff's affidavit attached to the intake questionnaire sets forth numerous

conversations she had with Carey about her pregnancy as well as one meeting with Lauter on

August 10, 2013 where Plaintiff's pregnancy and her subsequent work plans were discussed.

Plaintiff also avers that Shipman replaced her as assistant manager. None of these assertions

state a claim for hostile work environment or sexual harassment based on a hostile work

environment, nor are they reasonably related to the allegations in the Amended Complaint. Only

---

[1] Plaintiff does not allege that the sexual harassment occurred in the form of a *quid pro quo*.

one episode involving Lauter or Shipman is cited in the intake questionnaire or charge and such discrete episodes do not support Plaintiff's hostile work environment or sexual harassment claims. *See Chacko*, 429 F.3d at 511. While Plaintiff did allege that Carey asked about her pregnancy, "suggested that [Plaintiff] get a pregnancy test" during work, and, upon finding out about the pregnancy, expressed her belief that Defendant had not been supportive of other pregnant employees, Plaintiff did not allege that any of these events rendered the work environment hostile or were representative of a pervasive ongoing pattern of abuse as required to state a hostile work environment claim. Because "[t]he narrative makes no reference to the general work environment . . . and includes no facts that would suggest sexual harassment of non-pregnant women or women other than" Plaintiff, those claims are not exhausted and must be dismissed. *Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 753 (E.D. Va. 1991).

While the intake questionnaire and charge do not evince exhaustion of the hostile work environment and sexual harassment claims, the charge contains one piece of evidence to support exhaustion of the retaliation claim. On the EEOC charge, Plaintiff checked the box for discrimination based on retaliation. Dkt. No. 49, Exh. J. But "a plaintiff [who] checks off a box for a particular type of discrimination on a Charge form, but then leaves the form bereft of any allusion to allegations of such discrimination cannot be deemed to have exhausted that claim." *Earl v. Norfolk State Univ.*, 2014 WL 2916718, at \*13 (E.D. Va. June 26, 2014). Absent from the affidavit is any assertion that Defendant's employees took adverse actions "in response to the employee's 'opposition' to an unlawful employment practice or 'participation' in an investigation of an unlawful employment practice[.]" *Johnson v. Portfolio Recovery Assocs.*, LLC, 682 F. Supp. 2d 560, 568 (E.D. Va. 2009). Because Plaintiff did not allege that she engaged in

protected activity in the EEO documents, she has not exhausted her retaliation claim in the Amended Complaint.

For these reasons, Plaintiff has failed to exhaust Counts III, IV, and V and the Court lacks subject matter jurisdiction those claims.

### C. Remaining Grounds for Summary Judgment as to Remaining Claims

Defendant also contends that summary judgment should be granted as to the remaining counts because: (1) Plaintiff failed to comply with Defendant's discrimination reporting procedures; and (2) failed to state a prima facie case of discrimination in the Amended Complaint. The Court finds that the record in this case is insufficient to award summary judgment to the Defendant on either of these grounds. The parties' arguments depend largely on testimony of the principals to the discriminatory conduct. This testimony differs in many important respects and a finding on these grounds would require the Court to weigh the credibility of the principals' statements. Therefore, summary judgment is inappropriate on the exhausted discrimination claims, Counts I and II.

### III. Conclusion

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment. Dkt. No. 32. Specifically, the Court GRANTS Defendant's Motion as to Counts III, IV, and V in the Amended Complaint. The Court DENIES Defendant's Motion as to Counts I and II.

May 10, 2017
Alexandria, Virginia

/s/ log
_____
Liam O'Grady
United States District Judge

14